UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                    )
UNITED STATES OF AMERICA,           )
                                    )
                                    )
                                    )
v.                                  )   Criminal Action No. 12-06103-LTS
                                    )
MATTHEW D. BREUER,                  )
                                    )
            Defendant.              )
_____)

MEMORANDUM AND ORDER ON MOTION TO SUPPRESS

May 21, 2012

SOROKIN, C.M.J.

Pending before the Court is Defendant Matthew D. Breuer's Motion to Suppress Statements (Docket #4). A hearing on the Motion was held on May 18, 2012. For the reasons that follow, Breuer's Motion is DENIED.

I.  **FACTUAL BACKGROUND**[1]

On November 5, 2011, at 2:07 a.m., National Park Ranger Victoria Van Duzer was on patrol with National Park Ranger Annalisa Jones within the Boston National Historical Park. At that time, she observed a green Land Rover driving on 5th Street. As the vehicle approached the intersection of 5th and 1st Streets, she observed that the vehicle failed to stop at a posted stop

---

[1] The factual background is drawn from National Park Ranger Victoria Van Duzer's testimony at the Hearing in addition to Van Duzer's Report submitted by Breuer as Exhibit 2 to his Motion to Suppress.

1

sign. After Van Duzer activated her lights, the vehicle came to a stop on 1st Street. Van Duzer observed that the vehicle's license registration tag was expired.

Van Duzer approached the vehicle and identified herself to the operator, the lone occupant of the vehicle, later identified as Breuer by his Massachusetts Drivers license. Van Duzer explained to Breuer that the reason for the stop was that he had failed to stop at the intersection. Breuer gave Van Duzer a blank look and appeared dazed. When Van Duzer asked Breuer if he had seen the stop sign at 1st and 5th, he did not answer her. Van Duzer also explained to Breuer that the sticker on his license plate was expired and asked him if the vehicle was currently registered. Breuer responded, "Is it currently registered?" Van Duzer observed that Breuer was flushed in the face, had extremely glassy eyes, and that his speech was very slow. Van Duzer asked Breuer where he was coming from that night and he stated, "I've been playing rackets all night." Van Duzer asked Breuer if he had consumed any alcohol to which Breuer responded, "No." Van Duzer then asked, "Nothing at all?" Breuer again answered, "No."

When Breuer handed Van Duzer his license, Jones indicated to Van Duzer that she had observed a knife in the vehicle next to Breuer. Van Duzer told Breuer to exit the vehicle for officer safety purposes. Breuer exited the vehicle very slowly, placing his hands on the car frame, drivers seat, and exterior of the vehicle. Van Duzer observed that when Breuer stood unassisted, he seemed to fall slightly backwards or to the side and needed to move his feet to catch his balance. Van Duzer directed Breuer to the sidewalk. Van Duzer explained to Breuer that she had observed a knife in his vehicle. He stated that the knife was a "sailing knife." Van

Duzer stated that it was still a knife and therefore an officer safety issue. Breuer, in annoyance, responded, "You've obviously never been sailing."

After calling in Breuer's drivers license information to the telecommunications operations center ("TOC"), Van Duzer explained to Breuer that she was going to perform a frisk to ensure that he did not have any weapons on him. During the frisk, Van Duzer noticed the smell of an alcoholic beverage emanating from Breuer. TOC then notified Van Duzer that the vehicle's registration was expired. When Van Duzer stated this fact to Breuer he told her that his parking garage was nearby and that he would just park it there. Van Duzer refused this request.

TOC notified Van Duzer that Breuer had a criminal history. Van Duzer asked Breuer what his criminal history was. Breuer responded that he did not have a criminal history. Van Duzer then asked Breuer if he had ever been arrested. After Breuer responded yes, Van Duzer asked him for what crime. When Breuer told Van Duzer that he had been arrested for drunk driving, she asked him when the drunk driving arrest occurred. Breuer answered, "Twenty years ago." As of November 5, 2011, Breuer was thirty-four years old. Van Duzer asked Breuer to confirm that his arrest had happened twenty years ago, and he replied, "Yes." Van Duzer asked if Breuer had been arrested besides that and he said, "Yes, a few years after that." Van Duzer asked him what for, at which point Breuer said, "For . . ." but did not finish.

Van Duzer told Breuer that before she could allow him to leave, he needed to perform some field sobriety tests. Breuer agreed but suggested that he could just drive his car to the garage. Van Duzer refused this request. At the end of these tests, Van Duzer opined that Breuer

was intoxicated and incapable of safe operation. Breuer refused to take the preliminary breath test.

In his affidavit, Breuer states that, from the moment he was stopped, and certainly after being ordered out of his vehicle and told to sit on the curb, he did not believe that he was free to leave the scene even if he wanted to do so.

At 2:17 a.m., Van Duzer placed Breuer under arrest for Operating a Motor Vehicle While Under the Influence of Alcohol and/or Drugs. Van Duzer then transferred Breuer to the Massachusetts State Police Lower Basin Barracks. At the Lower Basin Barracks, Van Duzer read Breuer the OUI Rights Notice. Breuer refused to take a chemical breath test. Breuer was then transported to Building 109 for booking. Once they arrived at Building 109, Van Duzer read Breuer his Miranda Rights. The Statement of Rights form indicates that it was signed at 3:35 a.m.

Breuer was charged with operating under the influence of alcohol or a controlled substance, in violation of 36 C.F.R. § 4.23(a)(1); refusal to submit to a chemical test, in violation of 36 C.F.R. § 4.23(c)(2); operating a motor vehicle without being properly registered, in violation of 36 C.F.R. § 4.2(b); possession of a dangerous weapon, in violation of 36 C.F.R. § 4.2(f); and failure to comply with a traffic control device, in violation of 36 C.F.R. § 4.12.

## II. DISCUSSION

Breuer asserts that the statements he made during his encounter with the Park Rangers should be suppressed because he was subjected to custodial interrogation without first being advised of his Miranda rights.

"Miranda warnings must be given before a suspect is subjected to custodial interrogation." United States v. Fornia-Castillo, 408 F.3d 52, 63 (1st Cir. 2005) (quoting United States v. Ventura, 85 F.3d 708, 710 (1st Cir. 1996)). Custodial interrogation has two subsidiary components: (1) custody and (2) interrogation. Ventura, 85 F.3d at 710. The ultimate inquiry in the custody determination is "whether there was 'a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest." Id. (quoting Thompson v. Keohane, 516 U.S. 99, 112 (1995)).

The Government argues that Breuer was stopped pursuant to a valid Terry stop. In Terry v. Ohio, 392 U.S. 1, 22 (1968), the Supreme Court recognized "that a police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possibly criminal behavior even though there is no probable cause to make an arrest." "This authority permits officers to stop and briefly detain a person for investigative purposes . . . and diligently pursue a means of investigation . . . likely to confirm or dispel their suspicions quickly." United States v. Trueber, 238 F.3d 79, 92 (1st Cir. 2001) (internal quotations omitted). "As a general rule, Terry stops do not implicate the requirements of Miranda because Terry stops, though inherently somewhat coercive, do not usually involve the type of police dominated or compelling atmosphere which necessitates Miranda warnings." Id. (quoting United States v. Streifel, 781 F.2d 953, 958 (1st Cir. 1986)). In Berkemer v. McCarty, 468 U.S. 420, 440 (1984), the Supreme Court held that ordinary traffic stops are analogous to Terry stops in that they are noncoercive and, therefore, "persons temporarily detained pursuant to such stops are not 'in custody' for the purposes of Miranda.

However, "[a] valid investigatory stop may nevertheless escalate into custody, thereby triggering the need for Miranda warnings, where the totality of the circumstances shows that a reasonable person would understand that he was being held to 'the degree associated with a formal arrest.'" Fornia-Castillo, 408 F.3d at 63 (quoting Stansbury v. California, 511 U.S. 318, 322 (1994)). "A policeman's unarticulated plan has no bearing on the question whether a suspect was 'in custody at a particular time; rather; the only relevant inquiry is how a reasonable man in the suspect's position would have understood the situation." Stansbury, 511 U.S. at 323-34 (quotation omitted); see Trueber, 238 F.3d at 93 ("[T]o the extent that the district court based its conclusion that [defendant] was in custody on the presumed and uncommunicated intent of the agents to prevent [defendant] from leaving the scene, it was in error."). Factors relevant to this inquiry include "whether the suspect was questioned in a familiar or at least neutral surroundings, the number of law enforcement officers present at the scene, the degree of physical restraint placed upon the suspect, and the duration and character of the interrogation." Fornia-Castillo, 408 F.3d at 63 (quoting Ventura, 85 F.3d at 711).

The statements Breuer challenges occurred between the time of the initial stop and his arrest. The Court finds that, during this time period of approximately ten minutes, the need for Miranda warnings was not triggered and, therefore, the Motion to Suppress must be denied. See United States v. Sharpe, 470 U.S. 675, 686 (1985) (holding that twenty-minute investigatory detention was reasonable where officers "diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly"); Trueber, 238 F.3d at 94 (fifteen-minute encounter not a de facto arrest); United States v. Owens, 167 F.3d 739, 749 (1st Cir. 1999) (fifty-minute detention was not a de facto arrest). Breuer was stopped by two Park Rangers on a

6

public street. See Trueber, 238 F.3d at 94 (holding that there was no de facto arrest because, although there were five government agents present at the scene, no more than two were in direct proximity to the defendant and only one questioned him); United States v. Zapata, 18 F.3d 971, 976 (1st Cir. 1994) ("Mere numbers do not automatically convert a lawful Terry stop into something more forbidding."). Breuer was not asked to leave the vehicle until one of the Park Rangers observed a knife inside the vehicle. At that point he was asked to remove himself from the vehicle and sit on the sidewalk. This was a reasonable step in relation to the Ranger's concern for their safety. See Trueber, 238 F.3d at 94 ("At this point in the encounter - following the initial stop of the truck and brief pat-down - a reasonable person would have believed only that he was being detained for investigation, not placed under arrest."). Except for the frisk for weapons, there is no evidence that the Rangers touched Breuer or put him in handcuffs until Van Duzer notified him that he was under arrest. There is no indication that the officers were bellicose; they neither voiced threats nor brandished their weapons. Here, the totality of the circumstances was not such that a "reasonable person would understand that he was being held to 'the degree associated with a formal arrest.'" Fornia-Castillo, 408 F.3d at 63 (quoting Stansbury, 511 U.S. at 322).

## III. CONCLUSION

For the foregoing reasons, Breuer's Motion to Suppress is DENIED.

/s/ Leo T. Sorokin
LEO T. SOROKIN
United States Magistrate Judge